UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 354 |
| vs. | ) | |
| | ) | Hon. Ronald A. Guzman |
| | ) | |
| DAVID LEWISBEY | ) | |

**MOTION IN LIMINE**

COMES NOW the defendant, DAVID LEWISBEY ("Mr. Lewisbey"), by and through his attorneys, Beau B. Brindley and Michael J. Thompson, and moves the Court, *in limine*, to exclude from admission into evidence at trial the text messages, Facebook posts, and photo images identified by the government as outlined below. In support, he states the following:

**I.  Text Messages**

The government seeks to admit into evidence multiple text messages that have been identified for the defense pursuant to this Court's order and are attached as Exhibit 1.[1] These text messages constitute inadmissible hearsay and should also be excluded pursuant to Rule 403 of the Federal Rules of Evidence. The received text messages were sent to Mr. Lewisbey by an unknown declarant. These text messages do not identify who that declarant is. Therefore, it is impossible to determine who it is that is actually sending the messages. Even if the government provides evidence regarding who the phone was registered to, this would not establish that it was actually being used by the party to whom it was registered. Any out of court statements made by an unknown individual and offered for the truth of the matter asserted constitute hearsay pursuant to Rule 801 and are inadmissible pursuant to Rule 802. Without sufficient proof of who

---

[1] The voluminous exhibits will be attached to the court's courtesy copy. The government will receive an identical copy.

1

the declarant sending these messages is, there is way for the government to establish any exception to the hearsay rule regarding these messages. And they should be excluded as inadmissible hearsay.

The messages purportedly sent from Mr. Lewisbey suffer from similar problems. First, the phone being utilized is registered to Felesa Melvin, Mr. Lewisbey's mother. There are no statements made in the text messages that identify who the declarant is—whether it is Mr. Lewisbey or another acquaintance or associate. Without proof of who the declarant of these text messages is, the statements in these messages cannot qualify as admissions by a party opponent and, thus, constitute inadmissible hearsay.

The selected text messages involve vague comments about what the government alleges are possibly firearm purchases being discussed by Mr. Lewisbey. However, the government cannot connect these text messages to any identifiable firearm that was ever actually sold or purchased. Therefore, these text messages ultimately amount to vague discussions about what *might* be a possible firearms purchase that apparently did not happen. They are not proof of any actual firearm sales by Mr. Lewisbey. Consequently, their probative value is quite low. However, the prejudicial impact of introducing any conversations that might be about firearms sales in a firearms trafficking case is obviously significant. Any mention of firearms is likely to compel the jury to assume the existence of a firearms sale even when there is no proof that one happened. Tempting a jury to make an unsupported assumption creates a substantial prejudicial impact. Because of the inability to definitively identify the declarants, the prejudicial impact of the admission of these messages is increased. There is a very real possibility that these are not even conversations in which Mr. Lewsibey himself participated. Yet, the jury will assume that he did. Admitting text messages that may not have been sent by the defendant and suggesting that they

contain his words undoubtedly creates a prejudicial impact that substantially outweighs the limited probative value that these text messages have. Therefore, pursuant to Rule 403 of the Federal Rules of Evidence, these text messages should be excluded.

**II.     Photos**

The government has provided a large number of images taken from Mr. Lewisbey's phone and indicated the intent to admit these photos into evidence. These photos fall into two categories: (1) apparently random images of firearms and cash; and (2) images of certain individuals, personal items, and documents.

Regarding the first category of images, which are attached as Exhibit 2, there is no doubt that the introduction of images of firearms and cash taken from Mr. Lewisbey's phone will paint him in a very negative light for the jury. A juror is likely to see these images of firearms and conclude that these are all firearms Mr. Lewisbey was involved in selling and that the cash in the images is money made from selling firearms. This is obviously has a very prejudicial impact for Mr. Lewisbey. The problem with these images is that there is no evidence that any of these firearms were actually real. These could have been images downloaded from the internet and some of them appear to be. A Google search for firearms and cash images provides a host of images all very similar to those the government seeks to admit into evidence. The depicted firearms could have been pictures taken by someone else and sent to Mr. Lewisbey. They could be images of prop firearms or fake firearms or replica firearms of some kind. The government has no evidence that any of these firearms were real. They have no evidence of where these images originated or if they were actually pictures taken by Mr. Lewisbey. They have no way to prove that any of these are authentic pictures of a single firearm that was ever sold or pictures of a single firearm on which Mr. Lewisbey ever laid eyes. Allowing the undeniably tempting

3

inference from the jury that each of these many pictures depicts a real firearm that Mr. Lewsibey sold when the government cannot produce any evidence to establish that fact is to allow the jury to be tempted to make an inference that cannot be supported by the evidence. Flooding the jury with this many images of firearms is likely to cause the jury to wish to convict based on the sheer volume of firearms images presented despite the fact that not a single one of those images can be proven to be a real gun that Mr. Lewisbey ever laid eyes on. The likelihood that the jury could be overwhelmed and revolted by a flood of random firearms images, none of which can be connected to a single gun transaction about which the government has evidence makes it undeniable that the admission of all of these firearms images is unduly prejudicial. There is little probative value in the fact that Mr. Lewisbey's phone possessed multiple images of what may or may not be real firearms. The fact that he had images of firearms does not provide any insight into whether he actually sold a single one. With a limited probative value, the very high risk that the jury could be overwhelmed by the volume of these firearms images and convict based on that rather than on any evidence of actual sales of firearms makes it the case that the prejudicial impact of these photos substantially outweighs any probative value and renders them inadmissible pursuant to Rule 403. Before any image of firearm can be admitted, the government should be required to provide evidence showing (1) that the gun is real, (2) that Mr. Lewisbey had some connection with that firearm, and (3) that such firearm was advertised or sold by Mr. Lewisbey. Only then could the probative value of any of these firearms images measure up to the risk of unfair prejudice.

  The images of U.S. currency, attached as Exhibit 3, show cash sitting on car seats. They show cash in various persons' hands. However, in the vast majority of these pictures, there is no evidence that Mr. Lewisbey is the person holding the cash. Nor is there any evidence of what the

source for this cash is. Random images of cash do not provide any insight into whether David Lewisbey trafficked firearms without a license. There is no evidence of where this cash came from or, in most cases, of who is holding it. Showing the jury multiple images of cash found on Mr. Lewisbey's phone in this case will undoubtedly tempt the jury to conclude that the money came from the sale of firearms. After all, that is what he is charged with. However, there is no proof that this cash came from such sales. Evidence that strongly tempts the jury to make a conclusion that is not supported by the evidence constitutes the very definition of evidence about which the risk of unfair prejudice demands exclusion. Furthermore, pictures of large amounts of cash automatically compel a jury to make a negative inference about the defendant and view him as a person who makes money in some illegitimate fashion. When there is no evidence connecting that cash to the charged crime, the allowance of that inference is unnecessary and inappropriate. With no proof that the cash in these images can be connected to an identifiable sale of firearms or, in most cases, to Mr. Lewisbey himself, the images' probative value is essentially nonexistent. They have no real relevance other than to try to create within the jury a negative sentiment against the defendant. Hence, the prejudicial impact created by the risk that the jury will automatically make an assumption that the evidence does not justify substantially outweighs the probative value and the images of cash should be excluded.

      The remaining images will be discussed one at a time. First, there is an image of a bed. Exhibit 4. There is no indication of what makes this bed relevant in any way. Therefore, without further evidence or foundation, this image should be excluded.

      There is an image of part of an envelope with a return address containing the name Kenneth Griffin. Exhibit 5. There is no indication of what the envelope contains or why that particular envelope has any relevance. Therefore, this image should be excluded.

There is an image of what appears to be a key chain attached to novelty dog tags with inscriptions on them. Exhibit 6. The inscriptions do not reference firearms in any way. Thus, the dog tags image has no relevance and should be excluded.

There are two images of identification cards. Exhibit 7. There is no indication of why these images are relevant. If the government has seized identification cards that are relevant, they can be admitted. But there is no evidence that these images of identification cards have any particular relevance to any identifiable issue. Without further foundation, they should be excluded as irrelevant.

There are images of a lease application. Exhibit 8. There is no indication of what relevance this document may have. Therefore, its images should be excluded. Its contents are inadmissible hearsay.

There is an image of a W2 form. Exhibit 9. There is no indication of what relevance this tax form could possibly have. The government has Mr. Lewisbey's tax records if they wish to admit them for any reason. The image of this W2 form has no relevance and it should be excluded.

There is an image of a Hazel Crest Police report indicating that Mr. Lewisbey was the victim of a battery. Exhibit 10. This battery has no connection to the case and the image of the police report is irrelevant. Its contents are also inadmissible hearsay.

There is an image of a letter to Mr. Lewisbey, written by the City of Crown Point. Exhibit 11. The contents of the letter are inadmissible hearsay and it should be excluded.

There is an image of a Chase receipt. Exhibit 12. No names appear on the receipt. It is irrelevant to the case and should be excluded. Moreover, its admission would constitute a violation of the Best Evidence Rule.

There is an image of an envelope with Mr. Lewisbey's name on it. Exhibit 13. There is no evidence indicating that this envelope has any relevance to the case. Nor is there any indication of who wrote the print that appears on it. Thus, the printing constitutes inadmissible hearsay. The image should be excluded.

There are two images of Mr. Lewisbey holding United States currency. Exhibit 14. There is no evidence connecting this currency to any firearms transaction whatsoever. Its only purpose would be to inflame the passions of the jury by making Mr. Lewisbey appear to be some sort of gangster showing off a wad of cash. With no connection to any firearms transaction, these images of Mr. Lewisbey holding cash have no probative value. The undeniable prejudicial impact of depicting a defendant flaunting a wad of cash substantially outweighs the nonexistent probative value of these images and they should be excluded.

Lastly, there are two images of unidentified males. Exhibit 15. Neither is involved in any firearms transactions in the images. Neither had a firearm in the images. There is no indication of who took the pictures. With no further foundation, these images are plainly irrelevant and should be excluded.

### III. Facebook Posts

The Facebook posts suffer from the same problems that the text messages do. Exhibit 16. There is no evidence establishing who the actual participants in the Facebook conversations are. The government may provide foundation about the name that is on the Facebook accounts. But this is unhelpful for several reasons. First, the name on the account does not have to match the identity of the poster. Oftentimes, people create Facebook accounts using names other than their own. Therefore, the government cannot prove who it is that is actually posting the messages. Without proof of who the declarants of these messages are, there is no way to establish that the

statements contained in the messages qualify for any exception to the hearsay rule. Consequently all of the statements contained in the Facebook posts should be excluded as inadmissible hearsay pursuant to Rule 801 and 802.

In addition, the Facebook posts contain boisterous statements from the poster (who the government purports to be Mr. Lewisbey) about being a "gangster." Likewise, there are a series of posts that are derogatory to women. None of these comments have any relevance. Instead, there are purely inflammatory comments that would cause revulsion in the jury without presenting any probative evidence. The prejudicial impact of all such posts outweighs the absent probative value and requires that the posts be excluded.

Furthermore, the government cannot connect any of the Facebook posts to actual firearms transactions that took place. Without some proof that any firearms sale vaguely referenced in these posts took place, their probative value is again limited. As with the text messages, any vague references to firearms will almost inevitably lead to the jurors' inference that these refer to sales that actually happened. Admitting evidence that tempts the jury to make assumptions unsupported by the evidence amounts to the admission of evidence the prejudicial impact of which outweighs the probative value. Further, because anyone could be making these posts and there is no way to prove who the author of the posts is, admitting them risks that the jury might put words in the mouth of the defendant that he did not actually utter. Unless the government can prove that the posts they wish to admit can be connected to a real firearms sale that can be identified, then the risk of this prejudicial impact substantially outweighs any probative value and the Facebook posts should be excluded pursuant to Rule 403.

WHEREFORE, Mr. Lewisbey respectfully requests that this honorable Court grant his motion *in limine* and exclude the evidence identified above.

Respectfully submitted

By: s/ Beau B. Brindley
By: s/ Michael J. Thompson


LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, IL 60604
312-765-8878 (Phone)
312-276-48040 (Fax)